IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| HARTFORD LLOYD'S INSURANCE COMPANY, | § § § § § | |
| Plaintiff, | | |
| v. | § § § | CIVIL ACTION NO. G-05-056 |
| JAMES D. YARBROUGH and CAROL YARBROUGH, | § § § § | |
| Defendants. | § | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT**

This case arises out of a dispute over insurance coverage between Plaintiff Hartford Lloyd's Insurance Company ("Hartford") and their insureds, James and Carol Yarbrough (the "Yarbroughs"). Hartford's Original Complaint seeks a declaration from this Court that the appraisal award issued as a result of water damage to the Yarbrough's home is not binding and should be set aside. Hartford also seeks a declaration that it has fully complied with it contractual obligations to the Yarbroughs. The Yarbroughs have filed a counterclaim against Hartford alleging negligence, bad faith, and violations of the Texas Insurance Code. Now before the Court are Plaintiff's Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgement. At this stage, Plaintiff seeks a declaration that the appraisal is not binding while Defendants seek a declaration that it is. For the

reasons outlined below, Plaintiff's Motion is **GRANTED** and Defendants' Motion is **DENIED**.[1]

**I. Background**

On or about March 15, 2004, Hartford issued a Texas Homeowners Insurance Policy (the "Policy") for the Yarbroughs' dwelling located at 2621 Gerol Drive in Galveston, Texas, as well as the personal property located therein. On March 19, 2004, the Yarbroughs discovered a plumbing leak under the tub in their master bedroom. The leak was stopped that day and repaired on March 23, 2004. On March 30, 2004, the Yarbroughs had their home inspected by ServPro. ServPro provided an estimate of $3,902.72 for the remediation of mold in the Yarbroughs' master bathroom. On that same day, the Yarbroughs reported the leak to Hartford and informed them that the leak had already been repaired.

The Yarbroughs' plumbing was subsequently inspected by a contractor hired by Hartford, and it was determined that the master bathtub contained a small crack that was allowing water to slowly leak into the area below the tub. Hartford's contractor provided an estimate to repair the damage in the amount of $3,144.94. This amount was below the Yarbroughs' deductible.

On June 10, 2004, the Yarbroughs obtained an additional repair estimate from Regal Contracting in the amount of $18,885.67. This estimate was limited to areas in the master bathroom. After the Yarbroughs and Hartford were unable to reach an agreement regarding the cost of the repairs, Mr. Yarbrough sent a letter to Hartford invoking the appraisal clause of the Policy. Under the Policy's appraisal clause, Hartford and the Yarbroughs each designated an appraiser. The Yarbroughs designated Bob Barton ("Barton") as their appraiser while Hartford designated Mark

---

[1] The Court does not consider this Order worthy of publication. Accordingly, it has not requested, and does not authorize, publication.

Naessig ("Naessig") as theirs.

Barton prepared three different estimates, one for mold remediation in the amount of $78,083.03, one for rebuild in the amount of $77,929.30, and one for contents in the amount of $131,843.81. The estimate for mold remediation included remediation of visible mold in each room of the Yarbroughs' residence. It was based on Barton's observations of high humidity levels that could not be handled by the HVAC system and therefore resulted in excessive sweating and mold around the discharge vent areas. The rebuild estimate calls for work to be performed in each room of the Yarbroughs' residence. The contents estimate is the cost of replacing all the Yarbroughs' clothing and other soft items in the Yarbroughs' master bedroom and closet as well as the cost of cleaning the contents in the remainder of the residence. The total of the three estimates was $287,856.14.

Naessig's estimate was for $31,166.27 and included costs for construction work in the master bedroom, the master bathroom, a walk-in closet, and a dressing area. It did not include costs for any mold remediation. After Barton and Naessig compared their estimates and could not reach an agreement, they requested the services of Greg Barnhill ("Barnhill") as an umpire. After looking at all of the estimates, Barnhill recommended a total award of $221,149.19. The final award was signed by Barton and Barnhill.

The Policy contains a general exclusion for mold damage. However, that exclusion is not absolute and Exclusion 1.l. of the Policy provides that:

> We do not cover loss caused by or resulting from mold, fungi or other microbes.
>
> However, we do cover ensuing mold, fungi, or other microbial losses caused by or resulting from sudden and accidental discharge, leakage, or overflow of water or steam if the said sudden and accidental discharge, leakage or overflow of water or

3

steam loss would otherwise be covered under the policy.

Sudden and accidental shall include a physical loss that is hidden or concealed for a period of time until it is detectable. A hidden loss must be reported to us no later than 30 days after the date you detect or should have detected the loss.

For purposes of this exclusion, ensuing mold, fungi or other microbial losses covered under this policy include reasonable and necessary repair or replacement of property covered under Coverage A (Dwelling) and/or Coverage B (Personal Property).

We do not cover the cost for remediation, including testing of ensuing mold, fungi or other microbes. We do not cover any increase in expenses for Loss of Use and/or Debris Removal due to remediation and testing of ensuing mold, fungi or other microbes.

Remediation means to treat, contain, remove or dispose of mold, fungi or other microbes beyond that which is required to repair or replace the covered property <u>physically damaged by water or steam</u>. Remediation includes any testing to detect, measure or evaluate mold, fungi or other microbes and any decontamination of the residence premises or property.

(emphasis added). Hartford alleges that the appraisal award is not in compliance with the above-cited exclusion and is therefore invalid. Specifically, Hartford argues that the appraisal award includes costs to repair items not "physically damaged by water or steam." The Yarbroughs argue that the exclusion provides for coverage as determined in the appraisal award and that the award is therefore binding on Hartford.

**II. Legal Standard**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552–53, 91 L. Ed. 2d 265 (1986). The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence

of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party must come forward with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). The court must view all evidence in the light most favorable to the non-movant. *See, e.g.*, *Broussard v. Parish of Orleans*, 318 F.3d 644, 650 (5th Cir. 2003), *cert. denied*, 539 U.S. 915, 123 S. Ct. 2276, 156 L. Ed. 2d 130 (2003). If the evidence would permit a reasonable fact finder to find in favor of the non-moving party, summary judgment should not be granted. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

**III. Analysis**

In Texas, an appraisal award is binding so long as it made pursuant to the provisions of an insurance contract. *Wells v. American States Preferred Ins. Co.*, 919 S.W.2d 679, 683 (Tex. App.–Dallas 1996, writ denied); *Barnes v. Western Alliance Ins. Co.*, 844 S.W.2d 264, 267 (Tex. App.–Fort Worth 1992, writ dism'd by agr.). "Texas courts recognize three situations in which an appraisal award may be disregarded: (1) when the award was made without authority; (2) when the award was the result of fraud, accident, or mistake; or (3) when the award was not made in substantial compliance with the terms of the contract." *Wells*, 919 S.W.2d at 683 (citing *Providence Lloyds Ins. Co. v. Crystal City Indep. Sch. Dist.*, 877 S.W.2d 872, 875 (Tex. App.–San Antonio 1994, no writ)).

An appraisal award that assesses causation, coverage, or liability is made without authority, since appraisers may only determine the amount of a loss. *Wells*, 919 S.W.2d at 684. The evidence clearly shows that the final appraisal award resolved questions of both causation and coverage. In

his deposition, Barnhill testified that the appraisal award contained amounts to remediate areas of the house that had no physical contact with water. *See* Barnhill Depo. at p. 40 ln. 8-13. The Parties vigorously dispute whether items not physically damaged by water are covered under the Policy. By including such amounts, Barnhill implicitly resolved the dispute in favor of the Yarbroughs.

Additionally, Barton testified at his deposition that in the course of his appraisal, he determined that there was a causal relationship between the tub leak and the mold. *See* Barton Dep. at p. 30 ln. 14-20. Since an appraiser is not allowed to resolve disputes over causation or coverage, the appraisal was made without proper authority and is therefore, not binding.

## IV. Conclusion

For the reasons articulated above, the Court finds that the appraisal award is not binding on Hartford. Accordingly, Hartford's Motion for Partial Summary Judgment is **GRANTED** and the Yarbroughs' Motion for Summary Judgment is **DENIED**. To date, the Parties have only requested a ruling on the specific issue of whether the appraisal award is binding. The Court, having found that it is not, is well aware that there are several issues remaining in this case. While the Court has been presented with extensive evidence that would likely enable it to render judgment with regards to coverage, it is hesitant to do so absent the request of either Party. The Court can only assume that there are specific reasons counsel has not moved for summary judgment with regards to coverage. Since all counsel in this case are well-known to the Court as exceptional advocates, it respects their case-management related decisions. However, the Court **ORDERS** the Parties to file a statement of what issues remain extant in the case within ten (10) days of the date of this Order. Additionally, the Parties should include their plans for resolution of the remaining issues. Specifically, the Parties should indicate whether they plan on submitting additional briefing regarding the remaining issues or

whether they would like the Court to proceed with its analysis on the previously submitted materials.

**IT IS SO ORDERED**.

**DONE** this 24th day of May, 2006, at Galveston, Texas.

Samuel B. Kent
United States District Judge